IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS LINDSEY,

                            Plaintiff,                          OPINION & ORDER
        v.
                                                                16-cv-613-jdp
CRAIG TOM, A. JONES, and JOHN DOE,

                            Defendants.

---

CARLOS LINDSEY,

                            Plaintiff,                          OPINION & ORDER
        v.
                                                                16-cv-614-jdp
CRAIG TOM and LARRY PRIMMER,

                            Defendants.

---

Pro se plaintiff Carlos Lindsey, a state prisoner confined at the Wisconsin Secure Program Facility (WSPF), has filed two similar complaints under 42 U.S.C. § 1983, each challenging strip searches under the Fourth and Eighth Amendments. Lindsey contends that defendants in both cases had no penological reason for the strip searches and that they conducted the searches to humiliate him. In Case No. 16-cv-613, Lindsey alleges that during a strip search, the prison staff touched his genitals and buttocks, used unclean gloves, and aimed a camera at his genitals, in front of a female staff member and "spectators." Case No. 16-cv-613, Dkt. 1, at 1-3.  In Case No. 16-cv-614, Lindsey alleges that during another strip search, a female prison staff member removed his clothing, in view of other female staff members, out in the hallway when the strip search could have been conducted in a "strip cell," a more private area where strip searches were usually conducted. Dkt. 1, at 1-4.

Lindsey has an extensive litigation history that suggests a pattern of abuse, even though he does not yet have three "strikes" that would limit his ability to file new cases under 28 U.S.C. § 1915(g). But he has two: Eastern District of Wisconsin Case No. 14-cv-130, Dkt. 9, at 8, and Case No. 16-cv-822, Dkt. 12, at 5. And he has had another case dismissed as a sanction because he fabricated evidence in response to a motion for summary judgment. Case No. 16-cv-43, Dkt. 47, at 1. Because the judge in Case No. 16-cv-43 did not deem Lindsey's case to be "frivolous, malicious, or [one that] fails to state a claim upon which relief may be granted," I will not count it as a strike under § 1915(g). But fabricating evidence is a serious abuse of the litigation process, on par with the conduct that leads to restrictions under § 1915(g).

I remind Lindsey that Rule 11 of the Federal Rules of Civil Procedure prohibits litigants from presenting any pleading, motion, or other paper for any improper purpose, and that factual contentions in any court submission must have evidentiary support, or will have evidentiary support after reasonable opportunity for investigation. Given Lindsey's history, I am warning him that I will impose severe sanctions—including dismissal of these cases and restrictions on his ability to file future cases—if I conclude that he has made any false or unsupportable statement to this court.

Lindsey has made initial partial payments of the filing fee under 28 U.S.C. § 1915(b)(1) for both cases. The next step is for me to screen his complaints and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for monetary damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. I must read Lindsey's complaints generously. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam). With these

principles in mind, I will allow Lindsey to proceed with his Eighth Amendment claims and dismiss his Fourth Amendment claims in both cases.

ALLEGATIONS OF FACT

**A.  May 2015 strip searches (Case No. 16-cv-613)**

In May 2015, Lindsey was strip searched at WSPF for an unidentified reason. He was then placed under the strict supervision of the prison staff. Lindsey was not permitted to exit his cell without staff escort for the next 24 hours, until his second strip search.

The next day, the prison staff sought to strip search him again. Lindsey refused because he believed that the staff had no reason for the search. The staff then subjected Lindsey to a "staff assisted visual bodily cavity strip search." Case No. 16-cv-613, Dkt. 1, at 2. Defendant Craig Tom ordered the strip search and defendant A. Jones, with some unnamed staff members, conducted the search. No nurse was present during the strip search.

The staff conducted the second strip search as follows. They escorted Lindsey to a "non-private location," where female staff and "spectators" were present. *Id.* at 2-3. The staff cut off Lindsey's clothing and exposed his private parts. The staff then spread Lindsey's buttocks and manipulated his genitals, while wearing unclean gloves. The staff also pointed a camera at his genitals and filmed the strip search.

**B.  July 2016 strip searches (Case No. 16-cv-614)**

In July 2016, Lindsey was strip searched at WSPF three more times, again for reasons unidentified in the complaint. The first strip search was on July 12, 2016.[1] He was then

---

[1] Although Lindsey initially describes the first search on July 12, 2016 as a "pat-search," Case No. 16-cv-614, Dkt. 1, at 1, he later refers to it as a strip search, *id.*, at 2.

placed in his cell with one pair of socks, some underwear, and a bare mattress. The cell had a camera that allowed the staff to monitor Lindsey closely. It appears that Lindsey could not leave his cell until his second strip search, which took place the next day, early in the morning, on July 13, 2016, at 7 a.m. Lindsey was then strip searched yet again, at 9:45 a.m.

Although Lindsey does not make clear defendants' roles in conducting the strip searches, Lindsey alleges that defendant Craig Tom and Larry Primmer "trample[d] upon" Lindsey's constitutional rights through "the strip search," without specifying which of the three strip searches involved Tom and Primmer. Dkt. 1, at 4. Construing Lindsey's complaint generously, I understand Lindsey's complaint to mean that Tom and Primmer ordered at least one, and potentially all three, of the strip searches.

Lindsey does not describe the first and second strip searches, but he describes the third as follows. The staff escorted Lindsey to a hallway, a "non private location" instead of a "strip cell," which Lindsey describes as a more private place, where strip searches were ordinarily conducted at WSPF. Dkt. 1, at 3. The staff placed Lindsey on his knees, and a female staff member removed his clothing to expose his private parts. According to Lindsey, strip searches at WSPF were usually conducted with the inmates removing their own clothes at the direction of the prison staff.


ANALYSIS

## C.  Eighth Amendment claims

Lindsey challenges the strip searches in two ways: (1) defendants had no penological reason to conduct the strip searches; and (2) even if they had some penological reason, they

conducted the searches in a manner intended to humiliate him. Each of these two theories states a claim under the Eighth Amendment.

A strip search in prison can violate the Eighth Amendment's prohibition against cruel and unusual punishment if the strip search was "motivated by a desire to harass or humiliate rather than by a legitimate justification." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). The inmate must prove that defendants conducted the search for the purpose of humiliating the inmate. *See id.* at 899 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The challenged search must be "calculated harassment" or "maliciously motivated" conduct unrelated to institutional security. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004); *accord Sparks v. Stutler*, 71 F.3d 259, 262 (7th Cir. 1995) ("The eighth amendment's mental-state requirement . . . supplies protection for honest errors.").

Even if there might have been *some* legitimate justification, a strip search can still violate the Eighth Amendment if "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009); *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). For example, in *Mays,* the Seventh Circuit held that the case should have gone to the jury when the prison officials had conducted daily strip searches of inmates in view of other inmates in a freezing basement, by guards who wore dirty gloves and made demeaning comments to the prisoners. 575 F.3d at 650. Likewise, placing a prisoner in a transparent jumpsuit with his genitals exposed and presenting him in that state to other inmates and guards could be cruel and unusual punishment. *See King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015).

On the other hand, courts have held that group strip searches and strip searches conducted by members of the opposite sex, without more, do not violate the Eighth Amendment. *See Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) (reasoning that female guards monitoring naked male detainees was not cruel and unusual punishment); *Henderson v. Williamson*, No. 12-3069, 2014 WL 6657818, at *9 (C.D. Ill. Nov. 24, 2014) ("[T]he fact that Henderson was subjected to a strip search together with other inmates does not in and of itself violate the Constitution."). And unwanted touching during a strip search does not necessarily violate the Eighth Amendment when the inmate has been hostile towards the correctional officers. *See Cherry v. Frank*, 125 F. App'x 63, 66 (7th Cir. 2005) (citing *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003); *Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir. 1988).

### 1. May 2015 strip searches

I take Lindsey to be challenging the second of the two strip searches conducted in May 2015. As for the first strip search, Lindsey does not provide details and does not appear to contend that it was unconstitutional.

As for the second strip search, Lindsey has alleged enough to allow the inference that defendants had no penological reason for the second strip search. Lindsey alleges that he was strip searched within 24 hours of a previous strip search, even though he was under the strict supervision of the prison staff. Defendants may later present evidence that they had some legitimate penological reason for conducting the second search, but for the purposes of screening, Lindsey's allegations state an Eighth Amendment claim.

As for the manner of the search, Lindsey alleges that the second search was conducted in front of "spectators" and female staff. He also alleges that the staff who wore dirty gloves

touched his genitals, spread his buttocks, and filmed the strip search while pointing a camera at his genitals. Although Lindsey does not provide further details, for the purposes of screening, he alleges enough; if these allegations were true, and if defendants had no need to carry out the search in a way described by Lindsey, then his allegations would support his theory that defendants conducted the search in a manner intended to humiliate him.

As for the exact identities of defendants, I will allow Lindsey to proceed against Tom, Jones, and the Doe defendants who conducted the strip search. Lindsey does not explain in his complaint exactly what the Doe defendants did or fail to do, but the only wrongdoing alleged here is the strip search, and Lindsey makes clear that prison staff other than Tom and Jones conducted the strip search. Thus, the Doe defendants can mean only those staff members who conducted the strip search with Tom and Jones. Accordingly, the case will proceed against the Doe defendants who conducted the strip search and Lindsey may identify their names later in this case. At the preliminary pretrial conference that will be held at a later date, Magistrate Judge Crocker will explain the process for identifying the real names of the Doe defendants and amending the complaint to include the proper identities for those individuals. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("To the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation").

2. **July 2016 strip searches**

I understand Lindsey to be challenging the second and third of the three strip searches conducted in July 2016. Lindsey does not appear to challenge the first strip search, as he provides no details about it and does not explain how it was unconstitutional.

As for the second and third strip searches, Lindsey has alleged enough to allow the inference that defendants had no penological reason. Lindsey alleges that he was strip searched three times within two days. It appears that during these two days, he was under the strict supervision of the prison staff. He also alleges that he had only a pair of socks, some underwear, and a bare mattress in his cell, so any risk of contraband was remote. Although defendants may later show a legitimate reason for the strip searches, I cannot tell from Lindsey's complaint whether there was one. For the purposes of screening, Lindsey alleges enough to proceed.

As for the manner of the search, Lindsey again alleges enough to proceed beyond screening for the third strip search (he does not explain how the first and second strip searches were conducted). Lindsey appears to argue that defendants' failure to conduct the strip search in a designated area, the "strip cell," violates a state regulation, and in turn, his Eighth Amendment rights. But a violation of a state regulation by itself provides no basis for a § 1983 action. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). And the fact that a member of the opposite sex conducted the strip search does not by itself violate Lindsey's Eighth Amendment rights. *See Johnson*, 69 F.3d at 147.

But if the staff deliberately chose the hallway as the location of the strip search—i.e., going out of their way in violation of their own policy requiring the strip search to take place in a strip cell—just to humiliate Lindsey, that choice tends to support his theory that defendants conducted the search in a manner intended to humiliate him. *See Ghashiyah v. Frank*, No. 07-cv-308, 2007 WL 2061053, at *7 (W.D. Wis. July 12, 2007) ("If officers chose a public location simply to make a display out of petitioner with the hope of humiliating him in front of his peers, such a search would violate the standard set forth in

*Calhoun.*"). Defendants' choice of location may turn out to be justified, but Lindsey alleges enough to proceed.

As for the exact identities of defendants, I will allow Lindsey to proceed against Tom and Primmer. Generally, if a pro se plaintiff alleges enough facts to establish claims against unidentified individuals, the court must allow the plaintiff to amend his complaint to add Jane and John Doe defendants. *See Donald*, 95 F.3d at 555. Here, unlike his complaint in Case No. 16-cv-613, Lindsey does not explain whether any staff member other than Tom and Primmer was involved in the challenged the strip searches. Nor does he list a Doe defendant as a party to the action. As alleged, it seems that only two staff members were involved in the strip searches. At any rate, if Lindsey believes that he has a claim against the Doe defendants, he will know how to identify them because Magistrate Judge Crocker will explain how to identify the Doe defendants for Case No. 16-cv-613 anyway. And Lindsey can later amend his complaint to add more facts that establish claims against other staff members, subject to the processes that will be explained in the pretrial conference order that the court will issue at a later date. Thus, Lindsey may proceed against Tom and Primmer at this time, although Lindsey may amend his complaint later to assert claims against unidentified staff members.

## D. Fourth Amendment claims

For many good reasons, inmates have severely curtailed Fourth Amendment rights in prison. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984); *United States v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016); *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998). In the Seventh Circuit, an inmate can succeed on a Fourth Amendment unlawful search claim only when the challenged search involves an intrusion into his body. *Shaw*, 824 F.3d at 629 ("Under our precedent, [an inmate] could only claim that the prison personnel violated his

constitutional rights if there were a search that somehow invaded his body."); *King*, 781 F.3d at 900 ("[T]he Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies." (emphasis in original)). The kinds of bodily intrusions recognized as implicating the Fourth Amendment have included involuntary catheterization and abdominal surgery. *See Sparks v. Stutler*, 71 F.3d 259, 260-61 (7th Cir. 1995); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 44-48 (1st Cir. 2009).

Here, Lindsey does not allege that a bodily intrusion occurred during any of the strip searches in May 2015 or July 2016. He alleges that the staff-assisted search in May 2015 (the second strip search) was "visual," Case No. 16-cv-613, Dkt. 1, at 2, even though he also describes the search as a "body cavity search," *id*. The term "body cavity search" is often used by laypersons to include both the strip searches that are entirely visual and those that involve touching. But in the Wisconsin prison system, the term "body cavity search" has a particular meaning, as it is defined as "an x-ray, or a strip search in which body cavities are inspected by the entry of an object or fingers into body cavities." Wis. Admin. Code DOC § 306.17(3). I take Lindsey to be using the layperson's meaning of "body cavity search," rather than its definition under Wisconsin state regulation. His complaint does not suggest that the staff inserted an object into his body or used an x-ray during the search. I therefore construe his allegations to mean that no bodily intrusion occurred. As for the rest of the strip searches, his complaints do not include any allegation that may be construed as a bodily intrusion. Thus, he does not state a Fourth Amendment claim.

## E.  Logistics concerning two duplicative cases

Lindsey's two cases present essentially the same constitutional challenges to strip searches at the same prison. I will therefore consider how to streamline the management of

these two duplicative cases. *See Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) ("A district court has an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." (internal citation and quotation marks omitted)). There appear to be two options. First, defendants in 16-cv-614 could be joined into 16-cv-613 under Rule 20. Lindsey could then voluntarily withdraw his complaint in 16-cv-614, and the court would treat the withdrawn complaint as a supplement to his complaint in 16-cv-613; the clerk's office would then close 16-cv-614. Second, the court could consolidate the two cases under Rule 42(a) but keep both cases open. Both options are available here.

Joinder of multiple defendants into one action is appropriate where: (1) the plaintiff asserts a right to relief against each defendant from "the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants . . . arise in the action." Fed. R. Civ. P. 20; *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 (3d ed. 1998). As for the first requirement, courts interpret "transaction or occurrence" as "comprehending a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Birdo v. Dave Gomez*, No. 13-cv-6864, 2016 WL 6070173, at *8 (N.D. Ill. Oct. 17, 2016) (citation omitted). Courts consider "a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decision-making or widely-held policy." *Id.* (citation omitted). Joinder of parties is strongly encouraged. *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 548 (W.D. Wis. 1999) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)).

On the other hand, the Seventh Circuit has explained that "[u]nrelated claims against different defendants belong in different suits," and that keeping unrelated claims separate "ensure[s] that prisoners pay the required filing fees[.]" *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In cases where joinder would be improper, the court may nonetheless consolidate actions under Rule 42(a). *See 7 Federal Practice and Procedure* § 1653 ("However, even if the transaction requirement cannot be satisfied, there always is a possibility that separate actions can be instituted and then consolidated for trial under Rule 42(a), if there is a question of law or fact common to all the parties.").

Here, Lindsey's two actions appear to satisfy the requirements under Rule 20. Both cases arise from the same series of occurrences, as they both concern strip searches at the same prison, involving the same inmate. Although some strip searches were about one year apart from others and defendant Primmer is not a party to the first action, other factors weigh in favor of joinder; the strip searches involved similar conduct and implicated the same system of decision-making, as Tom allegedly ordered the strip searches allegedly to humiliate Lindsey in both cases. Both cases present the same Eighth Amendment issues.

Joinder would also make litigation more convenient for all those involved. Lindsey, a prisoner confined in a maximum security prison, would not have to make multiple, duplicative court submissions. Defendants and the Wisconsin Department of Justice may avoid wasting resources litigating two cases. The court will not need to write duplicative orders or hold separate trials. It also appears that if Rule 20 joinder were improper, Lindsey's cases may nevertheless be consolidated under rule 42(a), which would have essentially the same practical effects, except that both cases would remain open and Lindsey would have to pay the remainder of his filing fees for 16-cv-614.

The joinder option seems more efficient, as it would permit closing the second case, 16-cv-614, and pose less administrative burden. It would also save Lindsey the rest of the $350 filing fee for 16-cv-614. Thus, I am inclined to take the first approach.

But this case is still in the early stages, and it is unclear from Lindsey's complaints whether joinder would cause prejudice or confusion to any party. Thus, I will give the parties a chance to direct their own case: any party may object to the contemplated joinder. If no party objects, then the court will deem Lindsey's complaint in Case No. 16-cv-614 as voluntarily withdrawn, and treat it as a supplemental to his complaint in Case No. 16-cv-613. The initial partial filing fee that Lindsey has already paid in Case No. 16-cv-614 would be credited to his remaining balance for Case No. 16-cv-613. If any party objects to the joinder, the court will consider consolidation under Rule 42(a).

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos Lindsey is GRANTED leave to proceed in Case No. 16-cv-613 on his Eighth Amendment claims against defendants Craig Tom, A. Jones, and the Doe defendants for their involvement in the second strip search of plaintiff conducted in May 2015.

2. Plaintiff is GRANTED leave to proceed in Case No. 16-cv-614 on his Eighth Amendment claims against defendants Craig Tom and Larry Primmer for their involvement in the second and third strip searches of plaintiff conducted in July 2016.

3. Plaintiff's remaining claims are DISMISSED.

4. The parties will have until December 5, 2016 to object to the joinder that would add defendants in Case No. 16-cv-614 to Case No. 16-cv-613.

5. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not

attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

6. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered November 28, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

14