IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS LINDSEY,

       Plaintiff,

 v.                 OPINION & ORDER

CRAIG TOM, ANDREW JONES,      16-cv-613-jdp
LARRY PRIMMER, and JOHN DOE,

       Defendants.[1]

---

  Pro se plaintiff Carlos Lindsey, a state prisoner confined at the Wisconsin Secure Program Facility (WSPF), contends that he was subjected to unconstitutional strip searches in violation of the Eighth Amendment. He contends he could not have hidden any contraband, so defendants had no valid penological reason to strip search him. He also contends that defendants strip searched him in a manner intended to humiliate him because they searched his genital area by requiring him to manipulate his genitals and defendant Andrew Jones used his fingers to spread his buttocks.

  Both sides move for summary judgment. Lindsey's threats of self-harm prompted each of the strip searches, so each search had a legitimate penological reason: to ensure Lindsey's safety. Whether Lindsey could have hidden any contraband is a question of prison security on which I will defer to the judgment of prison officials. Lindsey's allegations that he was required to manipulate his genitals contradict the video recordings, so they do not raise a genuine dispute of any material fact. Jones's use of his fingers to spread Lindsey's buttocks does not

---

[1] I have amended the caption to show the full name of Andrew Jones.

show any intent to humiliate. I will grant defendants' motion for summary judgment and deny Lindsey's motion for summary judgment. I will direct the clerk of court to enter judgment in favor of defendants and close the case.

PRELIMINARY MATTERS

I begin with preliminary issues that define the scope of Lindsey's claims. On summary judgment, Lindsey contends that he was subjected to strip searches on May 17, 2015, May 19, 2015, and July 12, 2015, and twice on July 13, 2016. Lindsey did not challenge the May 17 and July 12 strip searches in his complaint. Nor does he explain how those two searches were unconstitutional in his summary judgment submissions. He has forfeited any complaint about those two searches. That leaves three strip searches: the May 19, 2015 search and the two July 13, 2016 searches.

I allowed Lindsey to proceed against the Doe defendants who participated in conducting the strip searches on him. Magistrate Judge Stephen Crocker explained to Lindsey how to identify the Doe defendants and set April 7, 2017, as the deadline for filing an amended complaint identifying the Doe defendants. Dkt. 14, at 3. But Lindsey did not identify the Doe defendants, and he does not raise any substantive argument against them now. Court staff automatically terminated the Doe defendants on July 10, 2017, for Lindsey's failure to meet the deadline to identify them. I will formally dismiss Lindsey's claims against the Doe defendants in the order below.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

All relevant events took place while Lindsey was incarcerated at WSPF. All defendants were security staff at WSPF. Craig Tom, a lieutenant, ordered the May 19, 2015 search and the first July 13, 2016 search. Andrew Jones, a correctional officer, conducted the May 19, 2015 search. Larry Primmer, a captain, ordered the second July 13, 2016 search.

A. **Strip searches at WSPF**

WSPF, like Wisconsin prisons generally, conducts two types of strip searches: "visual" strip searches and "staff-assisted" strip searches. In a visual strip search, an inmate removes his own clothing and moves his own body parts at the direction of a staff member. The staff member examines the inmate's body visually without touching it.

A staff-assisted strip search involves some touching. A staff member uses a knife or scissors to remove an inmate's clothing. The staff member then checks the inmate's mouth, hair, ears, fingers, armpits, feet, and toes. The staff member may touch sensitive areas using "bladed hands," meaning that the hands are kept flat with the fingers together as the staff member checks underneath the inmate's penis, scrotum, and between the buttocks.

An inmate who has been informed that he must be strip searched ordinarily has an opportunity to choose a visual strip search, but if an inmate resists or is violent, then a staff member performs a staff-assisted strip search. In both types of strip searches, a staff member may visually inspect an inmate's body cavities, but only medical staff are allowed to search by means of penetration. Wis. Admin. Code DOC § 306.17(2)(b) and (3). A strip search is required when an inmate is placed on clinical observation status for being suicidal or posing a danger to himself or others. Likewise, a strip search is required when an inmate is placed on

control status for being disruptive or violent. A supervisor may also order a strip search to ensure the safety of an inmate or prison staff.

## B. May 19, 2015 strip search

On May 19, 2015, Lindsey threatened to harm himself and reported that he did not feel safe in his cell. Stacey Hoem, a psychologist at WSPF, decided to place Lindsey on clinical observation status, and Tom asked Lindsey whether he would comply with a strip search. Lindsey at first said he would, but when correctional officers were escorting him to a holding cell for a strip search, he said, "Ya'll might as well do a staff-assisted strip search too," and said that the officers needed to get scissors because he would not comply with the strip search. Dkt. 34, ¶ 25. Tom ordered a staff-assisted strip search, and the officers escorted Lindsey to a holding cell, where Jones conducted a staff-assisted strip search on Lindsey. *See* Dkt. 26-1 (video recording of the staff-assisted strip search on May 19, 2015).

## C. July 13, 2016 strip searches

On July 12, 2016, Lindsey assaulted two staff members. Dkt. 28, ¶ 6 and Dkt. 28-1, at 1–2. Prison officials placed him on control status, and Lindsey was subjected to a strip search.

The following morning, on July 13, 2016, at about 6:50 a.m., Primmer received a phone call from a unit sergeant, who reported that Lindsey had tied his socks together to make a noose. Prison officials decided to place Lindsey on clinical observation status, which meant that prison staff had to strip search Lindsey again. Tom informed Lindsey that he would be placed on clinical observation status, and asked him to place his hands out of his cell to be restrained. Lindsey refused and said, "[G]o suit up you fag ass homosexual pig." Dkt. 26-4, at 2. Tom instructed another correctional officer to monitor Lindsey, left Lindsey's cell, and returned a few minutes later. When Tom returned, Lindsey had urinated on the floor, and Tom

and another correctional officer cleaned Lindsey's urine while Lindsey told Tom, "[C]lean that up you[']re my slave." *Id*. Lindsey then refused all directives to move. Tom assembled a cell-entry team, and the team moved Lindsey to a holding cell for a strip search. Officer Bromeland, a male correctional officer, conducted a visual strip search. *See* Dkt. 26-3 (video recording of the first visual strip search on July 13, 2016).

Lindsey states in his declaration that during the strip search he was required to manipulate his genitals. Dkt. 21, ¶ 1. The video recording contradicts Lindsey's declaration. Bromeland told Lindsey to show his fingers, ears, armpits, back, and his feet. He did not direct Lindsey to manipulate his genitals. Dkt. 26-3 at 09:17–10:19. I cannot rely on a party's version of facts that is "so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (reversing and noting that the court of appeals "should have viewed the facts in the light depicted by the videotape."); *accord Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). I will reject Lindsey's proposition that he was required to manipulate his genitals.

On the same day, at about 10 a.m., a staff member reported to Primmer that Lindsey had made a noose by ripping up a washcloth and had placed the noose around his neck. Dkt. 28-3, at 1–2. This time, Primmer himself went to Lindsey's cell and asked Lindsey whether he would comply with another strip search to ensure that he had no contraband. Lindsey refused. Although Lindsey refused to comply, Primmer ordered a visual strip search. *See* Dkt. 28-2 (video recording of the second visual strip search on July 13, 2016). Security staff escorted Lindsey to a holding cell, and at the cell's doorway, Primmer ordered a correctional officer to remove the suicide-resistant smock that Lindsey was wearing before having him enter the cell. *Id*. at 05:16. Officer Tafoya, a male officer, conducted the visual strip

search. Lindsey again states in his declaration that during this strip search he was required to manipulate his genitals. Dkt. 21, ¶ 4. Again, the video recording contradicts Lindsey's declaration: in the video, the officer directed Lindsey to show his ears, mouth, armpits, and feet. The officer did not direct Lindsey to manipulate his genitals. Dkt. 28-2, at 17:51–18:23. Once again, I cannot credit Lindsey's version of facts because they are contradicted by video evidence.

ANALYSIS

Lindsey is proceeding on Eighth Amendment claims against defendants Tom, Jones, and Primmer based on his allegations that they conducted unconstitutional strip searches on him. Both sides move for summary judgment.

A district court must grant summary judgment when no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When the parties cross-move for summary judgment, as they do here, the court "look[s] to the burden of proof that each party would bear on an issue of trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

A. **Defendants' motion for summary judgment**

Defendants move for summary judgment on all claims asserted by Lindsey. They contend that the strip searches on May 19, 2015, and July 13, 2016 did not violate the Eighth Amendment because they were justified and not conducted in any manner intended to humiliate Lindsey.

A strip search in prison can violate the Eighth Amendment's prohibition against cruel and unusual punishment if it is "motivated by a desire to harass or humiliate rather than by a legitimate justification." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). The challenged search must be "calculated harassment" or "maliciously motivated" conduct unrelated to institutional security. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).

Even if there is justification for it, a strip search can still violate the Eighth Amendment if "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). But unwanted touching during a strip search does not necessarily violate the Eighth Amendment if done for safety reasons. *See Cherry v. Frank*, 125 F. App'x 63, 66 (7th Cir. 2005). And the Eighth Amendment's "mental-state requirement . . . supplies protection for honest errors." *Sparks v. Stutler*, 71 F.3d 259, 262 (7th Cir. 1995).

Here, Lindsey has not shown that any of the strip searches lacked a legitimate justification or was conducted in a manner intended to humiliate him.

1. **May 19, 2015 staff-assisted strip search**

The May 19, 2015 strip search did not violate the Eighth Amendment. The strip search was done to ensure Lindsey's safety because Lindsey had threatened to harm himself. Security staff also had a legitimate justification to conduct a staff-assisted strip search. As Lindsey admits, he refused to comply with a visual strip search. Dkt. 32, ¶ 2. Security staff did not conduct the search in a manner intended to humiliate him. Jones used scissors to cut Lindsey's clothes at the doorway of the holding cell, which was located in a corner at the end of a hall, and several correctional officers blocked the view of his body by other persons. Lindsey presents no evidence that anyone other than the correctional officers saw his body. Nor does he dispute

7

that the holding cell's doorway was a private location. Dkt. 34, ¶ 37. The rest of the search was conducted inside of the holding cell.

Lindsey contends that correctional officers had no legitimate reason to search his rectal and genital areas because they had no probable cause to believe that he had contraband hidden in his rectal or genital area. Probable cause governs a claim for unreasonable search under the Fourth Amendment. *See generally Bullock v. Sheahan*, 568 F. Supp. 2d 965, 974 (N.D. Ill. 2008). But under the Eighth Amendment, the question is whether the search was a form of punishment.[2] If there were absolutely no reason at all to search Lindsey's private parts, that would make malicious motivation likely. But that is not the case here: there was a reason to conduct a thorough search of Lindsey's body because he had just threatened to harm himself. The possibility that an inmate would hide dangerous items in his rectal or genital area may seem unlikely, but evaluating such security risk is a matter that courts defer to prison officials' judgment.[3] Given the risk Lindsey posed to himself and the deference owed, the decision to search Lindsey's private parts was not a punishment.

Lindsey contends that Jones touched him inappropriately during the strip search, relying on one of my previous rulings, *Lewis v. Stephen*. No. 15-cv-051, 2016 WL 6638029, (W.D. Wis. Nov. 9, 2016). But in *Lewis*, the plaintiff had presented a declaration stating that

---

[2] *See, e.g.*, *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) ("[O]nly those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional."); *Sanders v. Heitzkey*, 757 F. Supp. 981, 987 (E.D. Wis. 1991), *aff'd*, 962 F.2d 10 (7th Cir. 1992) (reasoning that visual body cavity searches for "preventing prisoners' possession of weapons and contraband, even absent probable cause," do not violate the Constitution).

[3] *See United States v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016) ("Generally, we give considerable deference to the judgments of prison officials about matters of institutional safety and security." (citation omitted)).

8

the defendant's finger slightly penetrated his anus. 2016 WL 6638029, at *3. Here, Lindsey says in his declaration that Jones used fingers, as opposed to bladed hands, to spread his buttocks and "manipulate[d]" his genitals. Dkt. 32, ¶¶ 9, 11. The use of his fingers as opposed to bladed hands is such a slight departure from the prison policy that it does not show Jones' intent to humiliate Lindsey; it was an honest error at most. *See Sparks*, 71 F.3d at 262. As for the manipulation of genitals, Lindsey's statement in his declaration is too conclusory, and without more detail, it shows no intent to humiliate. Moving genitals slightly to examine a private area, when the search is justified to ensure safety, does not violate the Constitution. *See Cherry*, 125 F. App'x at 66.

Lindsey states in one of his declarations that security staff took no step to preserve his privacy from female officers who were invited as spectators. Dkt. 32, ¶ 4. I reject this conclusory statement. There is no basis whatsoever that any female officer was invited as a spectator. The video recording shows that female officers suited up in full gear and assisted in escorting Lindsey as part of a security team assembled in response to Lindsey's threat. Lindsey also relies on Wis. Admin. Code DOC § 306.17(2)(b), which provides that "Except in emergencies, a person of the same sex as the inmate being searched shall conduct the strip search." But a strip search conducted before a member of the opposite sex, by itself, does not violate the Constitution. *See Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995).[4]

---

[4] Lindsey does not argue in his briefs other challenges he originally asserted in his complaint: that defendants conducted the May 19, 2015 strip search with a camera aimed directly at his genitals, with unclean gloves, and without a nurse. I need not address these allegations because Lindsey has not briefed them.

9

## 2. July 13, 2016 strip searches

Lindsey raises similar arguments for both of the July 13, 2016 strip searches, so I address them together. I conclude that these visual strip searches did not violate the Eighth Amendment.

On July 13, 2016, Lindsey tied his socks together to make a noose, so Bromeland conducted a visual strip search. Hours later, Lindsey ripped up a washcloth to make another noose, so Tafoya conducted a visual strip search. Each strip search had a legitimate justification: ensuring Lindsey's safety. The video recordings show that neither Bromeland nor Tafoya conducted the strip search in a manner intended to humiliate Lindsey. Each strip search was conducted in a holding cell.

Lindsey contends that the July 13, 2016 strip searches violated his Eighth Amendment rights because: (1) there was no legitimate justification to conduct three strip searches within 24 hours when there was no reason to believe that Lindsey had contraband; (2) there was no legitimate justification to search his rectal and genital areas; (3) there was no reason to remove his suicide-resistant smock before he entered the cell, exposing his nude body to female staff; and (4) he could have removed the smock himself. None is persuasive.

First, Lindsey had managed to make nooses out of socks and a washcloth even when he was closely watched, so each strip search had a legitimate reason of ensuring his safety. Second, Lindsey's sole evidence that staff searched his rectal and genital areas is his declaration stating that he was required to manipulate his genitals, but the declaration blatantly contradicts the video recordings. Third, Primmer ordered a correctional officer to remove the smock because of Lindsey's misuse of property that morning (i.e., making a noose out of socks). Dkt. 28, ¶ 15. Perhaps it would have been difficult for Lindsey to harm himself or others with a smock that

10

was suicide-resistant, but evaluating that security risk is a matter on which I will defer to Primmer's judgment. Besides, Lindsey's smock was removed at the holding cell's doorway, right before he entered it, correctional officers blocked the view by other persons, and Lindsey presents no evidence that anyone saw his body other than the correctional officers involved. Any exposure of his nude body would have been so minimal that no reasonable jury could find it as a form of punishment. Fourth, Lindsey does not explain what difference it would have made if he removed the smock himself.

In sum, each of the three searches was justified, and none was conducted in a manner intended to humiliate Lindsey. I will grant summary judgment to defendants on the merits, so I need not address defendants' qualified immunity defense.

**B. Lindsey's motion for partial summary judgment**

Lindsey moves for partial summary judgment on his claims arising from the two July 13, 2016 strip searches. For the reasons discussed above, the strip searches were justified and not conducted in a manner intended to humiliate Lindsey. Lindsey's motion for summary judgment is denied.

**C. Warning about false or unsupported allegations**

In the November 28, 2016 order screening his complaint in this case, I acknowledged Lindsey's history of abusive litigation and warned him that sanctions would follow if he was misrepresenting the facts of this case. Dkt. 7, at 1–2. As discussed above, parts of Lindsey's allegations are contradicted by the video footage provided by defendants, and Lindsey has chosen not to provide evidence supporting other aspects of his original claims. This leads me to suspect that Lindsey knew that the allegations in his complaint were not entirely true. Given the unreliability of human memory and the fact that he likely did not have access to the footage

11

before filing this lawsuit, I am not convinced that he intentionally falsified his complaint. But he has inched closer to being sanctioned by this court for a pattern of abusive litigation. Should Lindsey follow this pattern in his other pending cases or in future cases, I will sanction him by restricting his ability to file cases in this court.

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos Lindsey's motion for summary judgment, Dkt. 18, is DENIED.

2. Defendants Craig Tom, Andrew Jones, and Larry Primmer's motion for summary judgment, Dkt. 22, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants Craig Tom, Andrew Jones, and Larry Primmer and close the case.

Entered March 30, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge